Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4738 | **DATE** | 10/22/2001 |
| **CASE TITLE** | USA vs. Bernard Watson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Watson's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 23 2001 date docketed | 2 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | 10/22/2001 | |
| | Copy to judge/magistrate judge. | 01 OCT 22 PM 5: 16 | date mailed notice | |
| | ETV   courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 00 C 4738 |
| BERNARD WATSON, | ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On April 8, 1997, a jury convicted Petitioner Bernard Watson of conspiring to interfere with commerce by threats or violence by conspiring to rob an armored truck, in violation of 18 U.S.C. § 1951, and using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The district court, Judge Ann C. Williams, sentenced Petitioner to 181 months' imprisonment. Petitioner appealed to the Seventh Circuit, raising four arguments, primarily challenging the factors considered in the calculation of his sentence. The Seventh Circuit upheld his conviction and sentence on August 19, 1999. Petitioner did not petition for leave to appeal to the Supreme Court. Now in federal custody in Milan, Michigan, Petitioner brings this motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner raises two arguments challenging his conviction and sentence. The government has not yet responded to Petitioner's motion, but because the court finds that neither of his arguments has merit, the court will rule on the motion without benefit of a response.

## FACTUAL BACKGROUND

Judge Williams issued a written decision on Petitioner's objections to his

presentence investigation report and the government's request for an upward departure, *United States v. Watson*, No. 93-CR-716, 1997 WL 460920 (N.D. Ill. Aug. 8, 1997) (hereinafter "*Watson I*"). The court relies on that decision, as well as the Seventh Circuit's decision on Watson's direct appeal, *United States v. Watson*, 189 F.3d 496 (7th Cir. 1999) (hereinafter "*Watson II*"), as the source for the facts set forth here. On September 8, 1992, Watson, together with Randy Ball, Carl Dixon, and Clarence Carter, robbed a Federal Armored Express ("Federal") truck near the corner of Flournoy and Cicero in Chicago. (*Watson II*, 189 F.3d at 498.) Ball, who works as a security officer and driver for Federal, had begun discussing plans for the robbery three weeks in advance with Dixon, who recruited Watson and Carter. (*Watson I*, 1997 WL 460920 at *1.) Ball explained his daily work routine to his co-conspirators, and the group decided that the roadside vendor near the Eisenhower Expressway where Ball regularly stopped for breakfast would be a good place for the robbery. (*Id.*)

On the morning of September 8, 1992, Watson, Dixon, and Carter drove Dixon's car to a spot near Cicero Avenue, about one block from an entrance to the Eisenhower Expressway, and waited for Ball to drive by in the Federal truck. (*Id.*) Ball drove the truck past the waiting car sometime between 6:00 and 7:00 a.m., parked near the roadside vendor, left the truck and walked up to the vendor. (*Id.*) Watson, Dixon and Carter followed the truck to the vendor, where Watson and Carter got out of Dixon's car and followed Ball up to the vendor. (*Id.*) Watson purchased a bottle of orange juice from the vendor. (*Id.*) Ball returned to the Federal truck, unsnapping his gun holster

on the way, and knocked on the back door of the truck so that the other Federal security guard, Benny Scott, would open the door. (*Id.*) As Scott opened the door, Carter grabbed Ball's gun, pushed Ball to the ground, and aimed the gun at Scott. (*Id.*) In response to Scott's attempt to wrest the gun away from Carter, Watson smashed his orange juice bottle over Scott's head, causing Scott's head to bleed. (*Id.*) Scott was blindfolded and bound with duct tape and a bag was placed over his head. (*Id.*)

Dixon, in his car, followed the truck to a pre-determined alley where the group transferred the contents of the truck to Dixon's car. (*Id.*) After unloading the truck, Carter and Watson bound Ball's hands and put a bag over his head, then destroyed the truck's radio. (*Id.*) Dixon, Carter, and Watson drove to Dixon's house to separate the cash from the other items they had stolen, including cigarette tax stamps and checks. (*Id.*) They then proceeded to a forest preserve at 87th and Western Avenue and burned the non-monetary items. (*Id.*) The group returned to Dixon's house and split the stolen money: Watson received $42,000, Carter received $38,000, and Dixon kept the rest to divide between himself and Ball. (*Id.*)[1]

On September 16, 1993, FBI Special Agent Ronald Hosko and Chicago Police Detective Robert Branum questioned Watson, who ultimately confessed his involvement in the robbery of the Federal truck and identified his accomplices as Ball, Carter, and Dixon. (*Id.*; *Watson II*, 189 F.3d at 498.) Watson, although he does not recall having done so, also signed an agreement to cooperate with the government at

---

[1] It is unclear from the record the exact amount of money that was stolen and split amongst the four robbers.

3

this time. (*Watson I*, 1997 WL 460920 at *2.) Following his September 16, 1993 confession, however, the FBI lost contact with Watson and obtained a warrant for his arrest. (*Id.*) When four police officers, along with Hosko and Branum, went to execute the warrant, Watson led them on a high speed chase. (*Id.*) The FBI ultimately gave up chasing Watson because he was driving at high speeds in a residential neighborhood; to elude capture, Watson also drove the wrong way down a one-way street and sped past a school and a school bus filled with children. (*Id.*)

It was not until June 9, 1996 that Watson and Dixon were named in a three-count indictment. (*Id.*) Count I charged both men with conspiring to commit robbery, which robbery obstructed, delayed, and affected commerce in violation of 18 U.S.C. § 1951, and Count II charged them both with use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). (*Id.*; *Watson II*, 189 F.3d at 499.) Count III charged Watson with resisting and assaulting federal officers engaged in performing their duties in violation of 18 U.S.C. § 111. (*Watson I*, 1997 WL 460920 at *2.) A jury found Watson guilty of the first two Counts, and acquitted him on the third on April 8, 1997. (*Id.*) On October 29, 1997, the district court sentenced Watson to 181 months of imprisonment. (*Watson II*, 189 F.3d at 499.)

Watson appealed to the Seventh Circuit, raising four arguments: (1) that the district court had exceeded the scope of remand by making new credibility determinations at his suppression hearing;[2] (2) that the value of the cigarette tax

---

[2] Prior to trial, Watson had moved to suppress his confession. Judge Brian
(continued...)

stamps should not have been calculated in the amount of loss because they are easily replaceable; (3) that his acquittal on the assault charge precluded the district court from enhancing his sentence for reckless endangerment during flight from the FBI; and (4) that leading police on a high speed chase through a residential neighborhood is not sufficient to support the reckless endangerment enhancement. (*Id.* at 500-502.) The Seventh Circuit disagreed with Watson on each point, however, and affirmed his conviction and sentence on August 19, 1999.

On July 17, 2000, Watson filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (hereinafter, "2255 Motion.") Watson raises two arguments in this motion: (1) he was denied the effective assistance of appellate counsel because counsel failed to challenge his firearm conviction on appeal; and (2) he was denied due process because there was insufficient evidence to support his firearm conviction, which was the product of an erroneous jury instruction. (2255 Motion at 4.) Because direct appeal is almost always an inappropriate venue for an ineffective assistance of counsel claim, the court recognizes that Petitioner's first claim was not procedurally defaulted and will consider its merits. *See United States v. Gilliam*, 255 F.3d 428, 437 (7th Cir. 2001); and *Hugi v. United States*, 164 F.3d 378,

---

²(...continued)
Barnett Duff granted that motion, but the Seventh Circuit vacated the decision and and remanded the case for a new hearing. *See United States v. Watson*, 87 F.3d 927, 928 (7th Cir. 1996). On remand, the case was transferred to Judge Ann C. Williams who initially granted Watson's motion to suppress, *United States v. Watson*, 1997 WL 24673, No. 93-CR-716 (N.D. Ill. Jan. 17, 1997), but, on reconsideration, vacated her earlier order and found the confession admissible. *United States v. Watson*, 1997 WL 124268, No. 93-CR-716 (N.D. Ill. Mar. 14, 1997).

381 (7th Cir. 1999). Furthermore, the court will not consider whether Watson's second claim might have been procedurally defaulted because, as will become clear below, the court's analysis of the first claim will inherently decide the merits of the second claim. The court finds, for the reasons below, that neither claim has merit. Watson's motion is, therefore, denied.

## DISCUSSION

Watson contends that his appellate counsel was ineffective, as he puts it, for failing "to raise 'specifically' the firearm issue." (Memorandum in Support of 2255 Motion, (hereinafter, "Memorandum") at 2.) To understand this claim, the court must consider Watson's second claim. In his second claim, Watson argues that, because he was charged with *use* of a firearm in furtherance of a crime of violence, rather than *conspiracy to use*, there was not enough evidence to convict him of use of a firearm in connection with the robbery. In Watson's view, the court erred in instructing the jury that he could be found guilty on the firearm count if his co-conspirator used a firearm. Watson's first claim, thus, amounts to a claim of ineffective assistance for his appellate counsel's failure to raise the issue Watson raises in his second claim.

Watson will only succeed in showing ineffective assistance of counsel if he can show that: (1) his counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense to the degree that it deprived the defendant of a fair trial, that is a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Dixon v. Snyder*, ___ F.3d ___, 2001 WL 1117462 at *6 (7th Cir. Sept. 20, 2001). *Strickland's* standard

is highly deferential to counsel, "presuming reasonable judgment and declining to second guess strategic choices." *Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001).

Even without the deference afforded counsel under *Strickland*, however, Watson's claim would not succeed because it is based upon a misunderstanding of the law. Watson is simply incorrect that it was error to apply the facts of the conspiracy to his firearms charge. *See Pinkerton v. United States*, 328 U.S. 640 (1946). In *Pinkerton*, the Supreme Court held that a conspirator could be found guilty of the substantive offenses with which he was charged, even though he did not participate directly in the commission of those substantive offenses, where the conspirator was found to be a party to an unlawful conspiracy and the substantive offenses charged were committed by his co-conspirator in furtherance of the conspiracy. *Id.* at 645. It did not matter that the conspiracy was not referred to in the counts charging the substantive offenses. This is precisely the circumstance in which Watson finds himself, and he will fare no better than the appellants in *Pinkerton*.

Petitioner appears to believe that the Supreme Court's decision in *United States v. Bailey*, 516 U.S. 137 (1995), changed the rules of *Pinkerton* liability, but the court disagrees. Prior to *Bailey*, some courts had held that, for purposes of a charge of use of a firearm in connection with an offense, the term "use" or "using" meant as little as "mere presence" of the firearm. The *Bailey* Court explained that the term "use" means "active employment," that is, "acts of brandishing, displaying, bartering, striking with,

and firing or attempting to fire a firearm . . . ." Although this ruling did alter the "use" standard, it did nothing to alter *Pinkerton's* holding. "It is beyond argument in this circuit that the rule of co-conspirator liability announced in *Pinkerton* applies to § 924(c) convictions, and that *Bailey* did nothing to alter this rule." *Woodruff v. United States*, 131 F.3d 1238, 1243 (7th Cir. 1997); *United States v. Damico*, 99 F.3d 1431, 1434 (7th Cir. 1996). Thus, *Bailey* is the standard by which the factfinder decides whether Watson's fellow conspirator "used" a firearm, and *Pinkerton* is the standard by which the factfinder decides whether Watson may be held accountable for that use. The jury answered both of these inquiries in the affirmative.

The court concludes that Watson's appellate counsel acted reasonably in not challenging Watson's firearm conviction on the basis Watson asserts he should have. Because Watson's position is contrary to well-established law, Watson was not prejudiced by the fact that his appellate counsel did not raise this issue on appeal. Furthermore, because Watson is mistaken in his interpretation of both *Pinkerton* and *Bailey*, his second claim is also without merit. Watson's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is denied.

ENTER:

Dated: October 22, 2001

REBECCA R. PALLMEYER
United States District Judge